UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JULIE ELICE FONTAINE, *et al.*,

Plaintiffs,

v.                                                    CASE NO. 3:16-cv-1301-J-34MCR

JP MORGAN CHASE BANK, N.A., *et al.*,

Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendant JP Morgan Chase Bank,

N.A.'s Motion to Dismiss with Prejudice ("Chase's Motion") (Doc. 18), Defendant

PHH Mortgage Corporation's Motion to Dismiss Complaint with Prejudice ("PHH's

Motion") (Doc. 19) (collectively, "Defendants' Motions"), Plaintiffs' Objection to

Defendants' Motions ("Objection") (Doc. 33), Plaintiffs' Motion to Comply with

Order (Doc. 35) regarding M.D. Fla. R. 3.01(g) ("Plaintiffs' Motion") (Doc. 37), and

Defendants' Joint Opposition and Response to Plaintiffs' Motion ("Defendants'

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed.R.Civ.P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed.R.Civ.P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; M.D. Fla. R. 6.02.

Response") (Doc. 39).  For the reasons stated herein, the undersigned

**RECOMMENDS** that Defendants' Motions be **GRANTED**, Plaintiffs' Motion be

**DENIED**, and this action be **DISMISSED with prejudice**.

## I.    Procedural History

On August 26, 2016, *pro se* Plaintiffs, Julie Elice Fontaine, James

Thompson, and Nancy James, filed a Complaint for Declaratory Judgment and

Expungement of a Public Record ("Complaint"), against Chase, PHH, and Does

1-10, in state court.  (*See* Doc. 2.)  On October 13, 2016, without conceding the

validity of the attempted service of process, Defendant PHH (with the consent of

Chase) removed the case to this Court based on diversity jurisdiction.[2]  (*See* Doc.

1.)  Plaintiffs moved to remand the case back to the state court, but Judge

Howard denied the request.  (Doc. 22.)

In November of 2016, both Chase and PHH moved to dismiss the

Complaint with prejudice pursuant to Fed.R.Civ.P. 12(b)(6) and 12(b)(1).  (Docs.

18, 19.)  After Plaintiffs filed their Objection to Defendants' Motions, the matter

was referred to the undersigned for a report and recommendation on April 5,

2017.  (Doc. 34.)  Plaintiffs' Motion, filed on May 1, 2017, was also referred and is

now ripe for resolution.

---

[2] It does not appear that Plaintiffs have attempted to serve process on Defendants Does 1-10, who are allegedly unknown individuals and/or business entities doing business in Duval County, Florida.  (Doc. 2, ¶ 8.)  In any event, Plaintiffs admit that they cannot state a claim against Does 1-10 at this time.  (*Id.* at ¶ 9.)

## II.     Relevant Factual Background

On July 13, 2004, Plaintiff Fontaine, "an unmarried woman," executed and delivered a Promissory Note regarding a loan for $129,675.00 in favor of PHH (formerly known as Cendant Mortgage Corporation) and a Mortgage secured by the real property (4544 Deer Valley Drive, Jacksonville, Florida 32210), which is recorded in the Official Records of Duval County Clerk's Office.  (Doc. 2-4 at ¶¶ 12, 14; Doc. 19-3; Doc. 33-2.)

Plaintiffs allege that as of July 16, 2004, they were the owners of record of the subject property, as evidenced by the Warranty Deed attached to the Complaint.  (Doc. 2 at ¶¶ 10-12.)  The Warranty Deed demonstrates that on July 16, 2004, title to the real property[3] at issue was conveyed by warranty deed to "Julie E. Fontaine, a single person."  (Doc. 2-2 at 2.)

On October 19, 2007, PHH executed an "Assignment of Mortgage," assigning to Chase "all beneficial interest in and to title to said Mortgage, together with the note and all other liens against said property securing the payment thereof," and recorded the assignment with the Duval County Clerk's Office. (Doc. 2 at 2 & ¶¶ 13, 21; Doc. 2-1 at 2; Doc. 2-4 at ¶ 15.)  The Assignment was allegedly effectuated into a securitized Real Estate Mortgage Investment Conduit ("REMIC") Trust 2004-67 of the Federal National Mortgage Association ("Fannie

---

[3] The property is listed as follows: "Lot 18, WESTIN UNIT ONE, according to plat thereof as recorded in Plat Book 52, Pages 100, 100A through 100D, of the Current Public Records of Duval County, Florida."  (Doc. 2-2 at 2; Doc. 19-3 at 18.)

Mae"). (Doc. 2 at 2.) Plaintiffs allege that unbeknownst to them, the Mortgage on their property "was being traded as a registered security . . . and [the transfer of interest was] never recorded on the Duval County, Florida, public records as required by law." (*Id.*) Plaintiffs also allege that the Note was not conveyed to the Trust. (Doc. 2 at ¶ 15.)

Further, Plaintiffs allege that the Assignment is void because it occurred years after the closing or settlement date of the Trust, which was August 30, 2004. (Doc. 2 at ¶¶ 13-14, 18; Doc. 2-3 at 3.) Plaintiffs ask the Court to declare that the allegedly void Assignment is a cloud on Plaintiffs' title. (Doc. 2 at 2 & ¶¶ 2, 18.) Plaintiffs allege that without obtaining declaratory relief, they will suffer irreparable harm because they "are threatened with the loss of their [p]roperty not having a marketable legal [t]itle returnable to the *status quo* when it was let [sic] to Defendants." (*Id.* at ¶ 26.) Plaintiffs allege, however, that "there is no ongoing foreclosure proceeding in effect governing, concerning or relative to any [of] the [p]arties herein, with respect to Plaintiffs' [r]eal [p]roperty [that is] the subject of this [a]ction." (*Id.* at ¶ 1.)

In addition to seeking a declaration that the Assignment is void and constitutes a cloud on Plaintiffs' title (*see id.* at ¶ 24), Plaintiffs seek "cancellation" and "expungement" of the allegedly void Assignment (*id.* at 1). Plaintiffs further allege that the Assignment contained fraudulent, misleading, and false

information, was the result of notary fraud, and the product of Robo-Signing.  (*Id.*

at ¶ 22.)

Plaintiffs attached to the Complaint the Affidavit of Joseph Esquivel, Jr., a

licensed private investigator in the State of Texas, which provides in part:

> 16.  I have looked at the Duval County Record relating to the Julie E.
> Fontaine Mortgage dated July 13, 2004.  The Duval County Record
> shows no record of a release of the Mortgage as required in
> covenant 23 of the Mortgage which states "Release.  Upon payment
> of all sums secured by this Security Instrument, Lender shall release
> this Security Instrument.  Borrower shall pay any recordation costs..."
> This has not happened.
>
> 17. I have looked at a copy of the MERS[4] Procedures Manual,
> Release 19.0, dated June 14, 2010, and MERS Residential
> Marketing Kit, Terms And Conditions: . . .
> Although MERS tracks changes in ownership of the beneficial rights
> for loans registered on the MERS System, MERS cannot transfer the
> beneficial rights to the debt.  The debt can only be transferred by
> properly endorsing the promissory note to the transferee. . . .
> MERS and the Member agree that (i) the MERS System is not a
> vehicle for creating or transferring beneficial interests in mortgage
> loans. . . .

(Doc. 2-4 at 4-5 (internal quotation marks omitted).)

### III.    Standard

To survive a motion to dismiss brought pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, "a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A

---

[4] MERS refers to Mortgage Electronic Registration Systems, Inc.

claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* "[B]are assertions" that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 680.

In evaluating the sufficiency of a complaint, a court should make reasonable inferences in plaintiff's favor, but is "not required to draw plaintiff's inference." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (internal citation and quotation marks omitted). "Similarly, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations." *Id.* (internal citation and quotation

omitted); *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

In determining whether to grant or deny a motion to dismiss, the Court must evaluate the complaint "on two dimensions." *Allmond v. Bank of Am.*, Case No. 3:07-cv-186-J-33JRK, 2008 WL 205320, at *3 (M.D. Fla. Jan. 23, 2008). First, the Court must assess whether all the necessary elements required for recovery are addressed in the complaint. *Id.* "Second, the Court must determine whether the complaint addresses these elements with factual material sufficient to raise a right to relief beyond mere speculation." *Id.* "This material can be either direct or inferential." *Id.* at *5. "To survive a 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Nettles v. City of Leesburg–Police Dep't*, 415 F. App'x 116, 120 (11th Cir. Dec. 22, 2010) (internal citations and quotation marks omitted).

Further, "the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

The court must limit its consideration to the complaint and its attachments.

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997) (per curiam); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993) (stating "the court limits its consideration to the pleadings and exhibits attached thereto"); *see also* Fed.R.Civ.P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). "However, where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal." *Brooks*, 116 F.3d at 1369. In such a case, if the defendant attaches these documents to the motion to dismiss, the Court need not convert the motion to dismiss into a motion for summary judgment.[5] *Id.*

Finally, the pleadings of *pro se* litigants must be liberally construed and "are held to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 448 U.S. 5, 9 (1980) (per curiam). However, *pro se* litigants are subject to the same law and rules of court as litigants who are represented by counsel. *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). Therefore, the

---

[5] Here, as PHH points out, Plaintiffs reference the Mortgage in the Complaint, but do not attach it. (*See* Doc. 19 at 4 n.2.) Because the Mortgage is referenced throughout the Complaint, and is undisputed and central to Plaintiffs' claims, the Court may consider it without converting Defendants' Motions into motions for summary judgment. *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. Aug. 16, 2010) (per curiam).

Court will not rewrite a *pro se* plaintiff's complaint to find a claim.  *See Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

## IV.   Discussion

### A.   Judicial Notice

PHH asks the Court to take judicial notice of Plaintiff Fontaine's prior action in this Court.[6]  (*See* Doc. 19 at 1 n.1.)  The prior action was filed in state court on November 26, 2014 and removed to this Court on February 20, 2015.  (*See* Doc. 1 in Case No. 3:15-cv-193-J-34PDB.)  In the prior action, Plaintiff was given an opportunity to file a second amended complaint, but she chose not to, and, instead, filed the present Complaint in state court, which, as noted earlier, was removed to this Court and which included two additional Plaintiffs – James Thompson and Nancy James.  (*See* Docs. 51, 53, 54 in Case No. 3:15-cv-193-J-34PDB.)

The undersigned finds it is appropriate to take judicial notice of Plaintiff Fontaine's prior action in the Middle District of Florida.[7]  *See Horne*, 392 F. App'x

---

[6] Specifically, PHH asks the Court to take judicial notice of Doc. 20 ("Plaintiff's Request to File Amended Complaint in Excess of Twenty Five Pages," which was construed as a motion for leave to file a second amended complaint) and Doc. 51 (the Court's Order dated January 11, 2016) in the prior action.  In the January 11, 2016 Order, Judge Barksdale gave Plaintiff "one final opportunity to amend" after observing that the proposed second amended complaint appeared "subject to the same fate as the case the plaintiff brought in the District of Columbia (No. 13-cv-1892) but [was] even more difficult to decipher than the amended complaint."  (Doc. 19-2 at 8.)

[7] As Judge Barksdale noted in her January 11, 2016 Order, before filing lawsuits in Florida, Plaintiff had unsuccessfully brought an action in the United States District

at 802 (finding that "[t]he district court properly took judicial notice of the documents in Horne's first case, which were public records that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned,'" without converting the motion to dismiss into a motion for summary judgment); *Helman v. Udren Law Offices, P.C.*, No. 0:14-CV-60808, 2015 WL 1565335, *1 n.1 (S.D. Fla. Apr. 8, 2015) (taking judicial notice of plaintiff's prior suit in the Southern District of Florida for background information purposes).

### B.    The Parties' Arguments

Chase and PHH each filed a Motion seeking dismissal of the Complaint with prejudice.  Chase argues that the Complaint should be dismissed for four independent reasons.  First, Chase argues that Plaintiffs' allegations cannot support a cause of action to quiet title because an assignment of mortgage does not affect the property owner's title.  Defendant explains: "An assignment of mortgage simply reflects a transfer of an already existing and valid lien on the property.  The owner or mortgagor is a stranger to that transfer, and his or her interest in the property remains unchanged by it."  (Doc. 18 at 2.)  Second, Chase argues that Plaintiffs lack standing to challenge the Assignment because they are

---

Court for the District of Columbia concerning the same property (4544 Deer Valley Drive, Jacksonville, Florida) against Chase, PHH, Federal National Mortgage Association, and John Does 1 through 10.  Plaintiff has also brought other mortgage-related actions involving other properties.  (*See* Doc. 19-2 at 3 n.2.)

not parties to the Assignment and their interests are unaffected by it.

Third, Chase argues that even if Plaintiffs had standing to challenge the Assignment and even if the Assignment could qualify as a cloud on title, Plaintiffs have not articulated any theory by which the Assignment could be found invalid. Defendant explains that under Florida law, a mortgage or assignment of a mortgage is not required to be publicly recorded, and a failure to comply with the terms of the REMIC Trust agreement does not affect the validity of the Assignment from PHH to Chase.  Chase contends that Plaintiffs have no standing to challenge compliance with the terms of the Trust agreement because they are not parties thereto.  Fourth, Chase argues that Plaintiffs cannot state a claim for declaratory relief because they cannot state a claim on the underlying cause of action to quiet title.  Based on the foregoing, Chase submits that leave to amend would be futile and the Complaint should be dismissed with prejudice.

PHH similarly argues that the Complaint should be dismissed with prejudice because Plaintiffs have failed to state a claim to quiet title or for declaratory relief and amendment would be futile.  Specifically, PHH argues that (1) Plaintiffs Thompson and James lack standing to prosecute this action, (2) all Plaintiffs lack standing to challenge the validity of the Assignment or compliance with the Trust Agreement, (3) the Assignment cannot constitute a cloud on title to property as a matter of law, and (4) Plaintiffs are not entitled to declaratory relief.

PHH contends that, if granted, the relief Plaintiffs seek – cancellation of a valid interest in a mortgage loan executed by Plaintiff Fontaine where the mortgage loan has not been paid in full or satisfied – would bestow a windfall on Plaintiffs.

Plaintiffs dispute that this is a quiet title action and argue that their "pleading is a singular issue to remove illegally recorded documents recorded on the [s]ubject [p]roperty."  (Doc. 33 at 1.)  Rather than directly address and attempt to rebut Defendants' arguments with citation to relevant legal authority, Plaintiffs' Objection, for the most part, includes excerpts from the Complaint and the exhibits attached thereto.  (*See id.*)  Plaintiffs argue, however, that pursuant to *Glaski v. Bank of America, National Association*, 160 Cal. Rptr. 3d 449 (Cal. Ct. App. 2013), they have "the right to dispute the assignments."  (*Id.* at 26.)

> ### C.    Analysis[8]

Starting with the standing issue, the undersigned agrees with Defendants that all Plaintiffs lack standing to challenge the validity of the Assignment or compliance with the Trust agreement, and that Plaintiffs Thompson and James in particular lack standing to prosecute this action.  First, as to Plaintiffs Thompson and James, the Warranty Deed does not show that they own the subject property (despite allegations to the contrary), and they do not allege to be parties to the

---

[8] Because this case was removed to this Court based on diversity jurisdiction (*see* Doc. 1 at 1), state substantive law applies.  *See, e.g.*, *Barrows v. Bank of Am., NA*, No. 8:14-cv-2121-T-33TGW, 2014 WL 7337429, *2 (M.D. Fla. Dec. 23, 2014) ("The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332; therefore, state substantive law applies.").

Note, the Mortgage, or the Assignment.[9]  (*Compare* Doc. 2 at ¶¶ 10-12 *with* Doc. 2-2 at 2 & Doc. 2-4 at ¶¶ 12, 14.)  Therefore, Plaintiffs Thompson and James lack standing to prosecute this action.  *See* Fla. Stat. § 65.061; *Helman*, 2015 WL 1565335 at *2 ("A complaint to quiet title must allege[,] [*inter alia*,] plaintiff's title to the property in controversy[.]"); *McGill v. Impac CMB Trust Series 2007-A*, No. 6:12-cv-1142-Orl-28TBS, *2 n.3 (M.D. Fla. Apr. 11, 2013) (report and recommendation adopted May 9, 2013) ("In Florida, to sustain a cause of action for quiet title, a plaintiff must show that (1) he has title to the land or property in controversy . . . ."); *Barclay v. Robert C. Malt & Co., Inc.*, 985 So.2d 53, 54 (Fla. Dist. Ct. App. 2008) ("By force of logic, statute, and case law, . . . a party must have title to a property to bring an action to quiet title.  With no title, there is nothing to be quieted.").

Furthermore, all Plaintiffs lack standing to challenge the validity of the Assignment or any non-compliance with the terms of the Trust agreement, because they are not parties to the Assignment or the Trust agreement and their interests are unaffected by the Assignment.  As stated in *McGill*:

---

[9] "Where a document on which the pleader relies in the complaint directly conflicts with the allegations of the complaint, the variance is fatal and the complaint is subject to dismissal for failure to state a cause of action."  *Appel v. Lexington Ins. Co.*, 29 So.3d 377, 379 (Fla. Dist. Ct. App. 2010); *see also Fladell v. Palm Beach Cnty. Canvassing Bd.*, 772 So.2d 1240, 1242 (Fla. 2000) (per curiam) ("If an exhibit facially negates the cause of action asserted, the document attached as an exhibit controls and must be considered in determining a motion to dismiss.").  Because the information in the Warranty Deed conflicts with Plaintiffs' allegations of ownership as to Plaintiffs Thompson and James, the Warranty Deed controls.

> Although the Eleventh Circuit has yet to rule on the issue, I am
> persuaded by courts across the country that have determined that
> plaintiffs "who are not parties to or third party beneficiaries of a
> [Pooling and Servicing Agreement (PSA)], lack standing to challenge
> the validity of or noncompliance with the terms of a PSA" or the
> validity of the assignment or transfer. . . .
> Plaintiffs have not alleged that they were parties to or third party
> beneficiaries of the PSA and nothing in the record would support
> such a finding.  Accordingly, I find that Plaintiffs lack standing to
> challenge the validity of the assignment/transfer and Defendants'
> compliance with the PSA.

2013 WL 1912787 at *2-3; *see also Howell v. PHH Mortg. Corp.*, Case No.: 6:15-cv-883-Orl-TBS, 2015 WL 5829673, *3 (M.D. Fla. Oct. 1, 2015) ("Plaintiffs' claims are based on the conclusion that the assignment of the Note and Mortgage are void for one reason or another, including that the assignments failed to comply with the terms of the Trust and that MERS did not have authority to act for Coldwell . . . . Plaintiffs do not have standing to raise a challenge to the validity of the assignments because Plaintiffs were not parties to those transfers."); *Rhodes v. JPMorgan Chase Bank, N.A.*, No. 12-80368-CIV, 2012 WL 5411062, *4 (S.D. Fla. Nov. 6, 2012) ("With respect to a challenge to either the validity of mortgage's assignment or transfer based on Defendant's failure to comply with Pooling and Servicing Agreement, Plaintiff has no standing to raise this argument . . . [because standing] requires status as a party to that agreement, a third-party beneficiary or an investor in the pooled mortgages[.]"); *In re Canellas*, No. 6:11-cv-1247-Orl-28DAB, 2012 WL 868772, *3 (M.D. Fla. Mar. 14, 2012) ("The

14

Bankruptcy Trustee . . . argues that because the assignment occurred beyond the time period required by the [Pooling and Servicing Agreement (PSA)], it was void. . . . Like the debtors in *Correia*, the Bankruptcy Trustee in this case does not have standing to challenge compliance with the PSA because neither she nor Mr. Canellas was a party to the PSA, a third-party beneficiary, or an investor in the pooled mortgages at issue."); *In re Correia*, 452 B.R. 319, 324 (B.A.P. 1st Cir. 2011) (per curiam) (affirming the decision of the bankruptcy court that the debtors lacked standing to challenge the mortgage's chain of title under the PSA because the debtors could not show they were parties to the contract).

As in the present case, the debtors in *Correia* "asked the bankruptcy court to declare the mortgage assignment invalid based upon non-compliance with the provisions of the PSA—a contract to which they were not a party." *Id.* However, the debtors were neither parties nor third-party beneficiaries of the PSA's terms. *Id.* The court, citing to *In re Almeida*, 417 B.R. 140, 149 n.4 (Bankr. D. Mass. 2009), noted that "the investors who bought securities based upon the pooled mortgages would be the parties with standing to object to any defects in those mortgages resulting from any failure to abide by the express provisions of the PSA," rather than parties who are not third-party beneficiaries of the PSA. *In re Correia*, 452 B.R. at 324.

Here, Plaintiffs do not allege that they are parties to the Assignment from

15

PHH to Chase, the Trust agreement, or any agreement through which the loan was transferred from PHH to the Trust.  In Florida, a non-party can sue on a contract only when he or she was an intended beneficiary of the contract; "non-parties who receive merely an incidental or consequential benefit from a contract have no right to its enforcement."  *Rebman v. Follett Higher Educ. Grp., Inc.*, 575 F. Supp. 2d 1272, 1276 (M.D. Fla. 2008).

> A non-party is an intended third-party beneficiary only if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong.  To find the requisite intent, it must be established that the parties to the contract actually and expressly intended to benefit the third party; it is not sufficient to show only that one of the contracting parties unilaterally intended some benefit to the third party.

*Id.* (internal citations and quotation marks omitted).

There is no allegation here that Plaintiffs were intended third-party beneficiaries of the Assignment from PHH to Chase, the Trust agreement, or any agreement through which the loan was transferred from PHH to the Trust.  As such, they lack standing to challenge the validity of the Assignment, the transfer of the loan to the Trust, or any non-compliance with the terms of the Trust agreement.[10]  Because "[a] claim cannot proceed in federal court if the plaintiff

---

[10] In this respect, Plaintiffs allege, *inter alia*, that the Assignment was executed years after the closing date of the Trust and that it contained fraudulent, misleading, and false information, was the result of notary fraud, and the product of Robo-Signing.

does not have standing," Plaintiffs' claim to quiet title must be dismissed.[11]

*McGill*, 2013 WL 1912787 at *2 (also stating that "[b]ecause standing is

jurisdictional, a dismissal for lack of standing has the same effect as a dismissal

for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1)").

Even assuming that Plaintiffs had standing, their claim to quiet title would

still be subject to dismissal because they have not shown that there is a cloud on

title.  "A plaintiff seeking to quiet title to property or remove a cloud on property

must show with clearness, accuracy, and certainty the validity of his or her title

and the invalidity of the title of the opposing party."  *Rhodes*, 2012 WL 5411062 at

*3; *see also Stark v. Frayer*, 67 So.2d 237, 239 (Fla. 1953) (stating that in an

action to quiet title against an alleged cloud, "a complaint must not only show title

in the plaintiff to the lands in controversy, but also that a cloud exists").

A mortgage may constitute a cloud on title if the debt has been paid or

otherwise satisfied, but the lien has not been released.  *See Matheson v.

Thompson*, 20 Fla. 790, 797-800 (Fla. 1884) ("The foreclosure and sale, and the

subsequent conveyance, are clouds upon his title which give him a standing in

equity to maintain this suit.  His deed was of record.  The evidence of the

payment of the mortgage debt was of record, and even the original satisfaction

piece was pasted upon the record book. . . ."); *see also Helman*, 2015 WL

---

[11] Although Plaintiffs dispute that there is any claim to quiet title in their
Complaint, the relief they request amounts to quieting title.  *See Barrows*, 2014 WL
7337429 at *2.

1565335 at *3 ("A mortgage may cloud title if it is improperly recorded or if it is satisfied but not removed.").  Plaintiffs here do not allege that the debt has been paid or otherwise satisfied.  Therefore, the Mortgage cannot constitute a cloud on Plaintiff's title.

Plaintiffs allege that the Assignment of the Mortgage is void and constitutes a cloud on Plaintiffs' title because it occurred years after the closing date of the Trust.[12]  They also allege that without their knowledge, the Mortgage was being traded as a registered security, the transfer of interest was never recorded, and the Note was not conveyed to the Trust.[13]  Despite these allegations, which are

---

[12] In support, Plaintiffs cite to *Glaski v. Bank of Am., Nat'l Ass'n*, 160 Cal. Rptr. 3d 449 (Cal. Ct. App. 2013).  However, in addition to being non-binding, *Glaski* is also distinguishable from the present case because, *inter alia*, that court was deciding whether the plaintiff had stated a wrongful foreclosure claim (under the theory that the entity invoking the power of sale, in its capacity as trustee for a securitized trust, was not the holder of the deed of trust), whereas here there is no allegation that the subject property is under foreclosure.  *See id.* at 452, 463, 466.  The *Glaski* court concluded that "a borrower may challenge the securitized trust's chain of ownership by alleging the attempts to transfer the deed of trust to the securitized trust (which was formed under N.Y. law) occurred after the trust's closing date."  *Id.* at 452.  The court stated: "Transfers that violate the terms of the trust instrument are void under New York trust law, and borrowers have standing to challenge void assignments of their loans even though they are not a party to, or a third party beneficiary of, the assignment agreement."  *Id.*  As explained in this Report, this conclusion does not seem to have been adopted in the Eleventh Circuit.  Also, as stated in *Altier*, defects in the chain of title "would only effect [sic] the ability of the holder of the Mortgage to foreclose but would not effect [sic] the validity of the Mortgage."  *Altier v. Fed. Nat'l Mortg. Ass'n*, No. 1:13-cv-164-MW/GRJ, 2013 WL 6388521, *4 (N.D. Fla. Dec. 6, 2013).

[13] To the extent Plaintiffs argue that the Assignment and/or the Mortgage are void because "MERS cannot transfer the beneficial rights to the debt" (Doc. 2-4 at 5), this argument fails because "under Florida law, MERS has the authority to assign the Mortgage and the authority to foreclose the Mortgage, if it so chooses, as the agent for the lender."  *Altier*, 2013 WL 6388521 at *6 ("Because neither the Mortgage nor the

assumed to be true when deciding a motion to dismiss, Plaintiffs have still not established a cloud on title.

As an initial matter, the transfer of a mortgage does not affect its validity or a mortgagor's obligation to pay the debt. *See Howell*, 2015 WL 5829673 at *3 ("The transfer of a mortgage on the secondary market does not discharge a mortgagor's obligation under a mortgage and note even if the original lender was paid.") (internal citations and quotation marks omitted); *Roder v. RH Funding Co.*, No. 6:12-cv-1076-Orl-36KRS, 2012 WL 6799690, *4 (M.D. Fla. Dec. 10, 2012) (report and recommendation adopted by 2013 WL 75278 (M.D. Fla. Jan. 7, 2013)) ("[E]ven if the note has been transferred as the Roders allege, such transfer did not relieve the Roders of the obligation to pay the amount owed to the transfer[]ee, even if the transferor was paid in full at the time of the transfer."); *Rhodes*, 2012 WL 5411062 at *4 (stating that "the fact that Defendant was paid on the note when the note was securitized does not mean the mortgage is now invalid," or that a mortgagor would be discharged from his or her obligations under the note because of the original lenders' sale and assignment of the notes).

Importantly, the terms of the subject Note and Mortgage allow the lender to sell or transfer the Note and Mortgage one or more times, without prior notice to the borrower. (Doc. 19-3 at 14 ("The Note or a partial interest in the Note

---

Assignment are void because MERS was utilized there is no cloud on the title to the Property and no cause of action to quiet title.").

(together with this Security Instrument) can be sold one or more times without prior notice to the Borrower. . . ."); Doc. 33-2 at 2.)

In addition, the Mortgage remains enforceable regardless of whether the Assignment was recorded.  As stated by the Eleventh Circuit:

> From the point of view of the mortgagor or someone standing in his shoes, a subsequent assignment of the mortgagee's interest—whether recorded or not—does not change the nature of the interest of the mortgagor or someone claiming under him.  Nor should a failure to record any subsequent assignment afford the mortgagor or the trustee standing in his shoes an opportunity to avoid the mortgage.

*In re Halabi*, 184 F.3d 1335, 1338 (11th Cir. 1999).

Furthermore, even an unrecorded and/or improper Assignment, including a transfer in which the Note and the Mortgage are separated/split, would not make the Assignment (or the Mortgage) a cloud on title.  *See Rinderknecht v. Quicken Loans, Inc.*, Case No.: 2:15-cv-19-FtM-29MRM, 2016 WL 81331, *3 (M.D. Fla. Jan. 7, 2016) ("Florida law is clear that neither 'splitting' the Note from the Mortgage nor an improper and/or unrecorded assignment of the Note renders Plaintiffs' Mortgage unenforceable.  Absent a finding that the Mortgage is unenforceable, the Mortgage is not a cloud on Plaintiffs' title and Plaintiffs are not entitled to a declaratory judgment."); *Howell*, 2015 WL 5829673 at *4 ("Assuming the Note and Mortgage were split, as Plaintiffs allege, 'the separation of the Note and Mortgage does not make the Mortgage (or the Note) voidable.'"); *Mahan v.*

*SunTrust Mortg., Inc.*, No. 5:14-cv-109-Oc-10PRL, 2015 WL 3605105, *5 (M.D. Fla. June 8, 2015) (stating that under Florida law, "an improper and/or unrecorded assignment does *not* disturb the validity of the underlying mortgage"); *Helman*, 2015 WL 1565335 at *4 ("An improper assignment does not disturb the validity of the underlying mortgage."); *Altier*, 2013 WL 6388521 at *4 ("[E]ven assuming there were deficiencies in the Assignment (which there were not) these deficiencies would not void Plaintiffs' obligations under the Note and the Mortgage and thus would not create a cloud on title. . . . [E]ven assuming only the Mortgage was assigned, without a corresponding assignment of the Note, this would only effect [sic] the ability of the holder of the Mortgage to foreclose but would not effect [sic] the validity of the Mortgage.  Because the Mortgage would not be voided by an assignment of the Mortgage only, the Mortgage does not create a cloud on title . . . ."); *Roder*, 2012 WL 6799690 at *4 (stating that "any defect in the chain of title on the mortgage (whether occurring before or during the securitization process) does not undermine the mortgage itself"); *see also Garrett v. Fernauld*, 63 Fla. 434, 437 (Fla. 1912) ("An assignment of a mortgage lien is not 'a conveyance' or a 'transfer' of 'any interest' in land covered by the mortgage, but is only an assignment or transfer of the lien created by the mortgage; and the recording statute . . . is not applicable.").

Based on the foregoing, Plaintiffs have failed to state a claim for

21

cancellation and expungement of the allegedly void Assignment, which the Court construes as a claim to quiet title.  As Plaintiffs' claim to quiet title fails, their claim for declaratory relief also fails.[14]  *See McGill*, 2013 WL 1912787 at *3 (recommending dismissal of Plaintiffs' claim for declaratory judgment, which was based on the same argument challenging the validity of the transfer/assignment under the PSA); *Roder*, 2012 WL 6799690 at *5 ("Because the Complaint fails to state a quiet title claim on which relief can be granted, the declaratory judgment claim also fails."); *Rhodes*, 2012 WL 5411062 at *4 (finding that "because Plaintiff's claim to quiet title cannot proceed, the declaratory judgment claim does not survive dismissal"); *see also Zolin v. Caruth*, No. 3:09cv38-WS, 2009 WL 2982907, *7 (N.D. Fla. Sept. 14, 2009) (emphasis in original) ("[T]he Declaratory Judgment Act does *not* establish an independent cause of action, it is procedural only and merely establishes a legal remedy available in cases brought pursuant to some other law.").

---

[14] While it is not clear whether Plaintiffs' claim for declaratory relief is brought pursuant to Florida's Declaratory Judgment Act or the federal Declaratory Judgment Act, given that this case is here based on diversity jurisdiction, the Court considers the viability of Plaintiffs' declaratory judgment claim under the federal Declaratory Judgment Act, 28 U.S.C. § 2201.  *Casault v. U.S. Bank, N.A.*, Case No: 6:14-cv-135-Orl-18DAB, 2014 WL 12614424, *3 (M.D. Fla. Aug. 27, 2014); *but see Zolin*, 2009 WL 2982907 at *11 ("A litigant that seeks a declaratory judgment from a federal court sitting in Florida may elect to attempt to state a claim under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 or the Florida Declaratory Judgment Act, Fla. Stat. §§ 86.011-86.111, et seq.").  "As a practical matter, however, the elements required under the federal or state declaratory judgment acts are not materially different."  *Casault*, 2014 WL 12614424 at *3 n.1 (internal quotation marks omitted).

Further:

> [I]n all cases arising under the Declaratory Judgment Act, the
> threshold question is whether a justiciable controversy exists. . . .
> [T]he party who invokes a federal court's authority must show, at an
> irreducible minimum, that at the time the complaint was filed, he has
> suffered some actual or threatened injury resulting from the
> defendant's conduct, that the injury fairly can be traced to the
> challenged action, and that the injury is likely to be redressed by
> favorable court disposition.  Furthermore, if the party's concern is the
> threat of future injury, there must be a substantial likelihood that the
> plaintiff will suffer such future injury: a perhaps or maybe chance is
> not enough.  Indeed, even a well-founded concern is insufficient to
> create a justiciable controversy if it is based on speculation.

*Axis Surplus Ins. Co. v. Contravest Constr. Co.*, 921 F. Supp. 2d 1338, 1343

(M.D. Fla. 2012) (internal citations and quotation marks omitted); *see also*

*Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999)

("[A] declaratory judgment may be issued only in the case of an actual

controversy. . . . [T]here must be a substantial continuing controversy between

two adverse parties. . . . Additionally, the continuing controversy may not be

conjectural, hypothetical, or contingent; it must be real and immediate, and create

a definite, rather than speculative threat of future injury.") (internal quotation

marks omitted).

Plaintiffs ask the Court to declare the Assignment of Mortgage void.

However, as PHH points out, Plaintiffs do not allege in the Complaint that the

loan is in default, that they have stopped making payments under the loan, that

any party has made a demand for payment, or that any party has commenced or

threatened to commence foreclosure proceedings.  (*See* Doc. 2 at ¶ 1 (alleging

that "there is no ongoing foreclosure proceeding in effect governing, concerning

or relative to any [of] the [p]arties herein, with respect to Plaintiffs' [r]eal [p]roperty

[that is] the subject of this [a]ction"), ¶ 26 (alleging that without obtaining

declaratory relief, Plaintiffs will suffer irreparable harm because they "are

threatened with the loss of their [p]roperty not having a marketable legal [t]itle

returnable to the *status quo* when it was let [sic] to Defendants").)  As such, there

is no justiciable controversy regarding the parties' respective rights.  Therefore,

declaratory relief is improper.  *See Roder*, 2012 WL 6799690 at *5 ("It also

appears that the declaratory judgment action is not based on an actual case or

controversy.  The Roders do not contend that any Defendant had threatened to

foreclose on the property, and they submit that they are not in default on the

payments due.") (internal citations omitted).

In sum, Plaintiffs' Complaint should be dismissed with prejudice.  Plaintiffs

do not request leave to amend and the undersigned finds that it would be futile to

do so.  As stated in *Howell*:

> When it appears that a *pro se* plaintiff's complaint, if more carefully
> drafted, might state a claim, the district court should give the *pro se*
> plaintiff an opportunity to amend his complaint instead of dismissing
> it with prejudice.  Dismissal with prejudice is proper, however, if . . . a
> more carefully drafted complaint could not state a valid claim.  The
> deficiencies in Plaintiffs' complaint cannot be cured through
> amendment and a more carefully drafted complaint could not state a
> valid claim.  This is so because Plaintiffs' claims, including his

> proposed claim to quiet title, are all premised on the same legally insufficient theories, i.e., that the transfer of the loan voided the Mortgage, MERS lacked authority to execute the assignment, and the assignment was made in violation of the terms of the Trust.  For the reasons explained *supra*, Plaintiffs cannot state a claim, including a claim to quiet title, based on these theories.  And, Plaintiffs do not have standing to challenge the validity of the assignment because they were not a party to the assignment.

2015 WL 5829673 at *4 (internal citations and quotation marks omitted).

Based on the foregoing, the undersigned recommends that Defendants' Motions be granted and all claims against Defendants be dismissed with prejudice.  This is not the first lawsuit that Plaintiff Fontaine has filed in this District based on strikingly similar allegations involving the same property against the same Defendants.  Plaintiff was given an opportunity to file a second amended complaint in the prior action, but instead of doing that, she voluntarily dismissed that action.  Based on this history, the nature of Plaintiffs' allegations and deficiencies in the Complaint, as well as the fact that Plaintiffs have not requested leave to amend, it does not appear that Plaintiffs could state a viable claim against Defendants even if they are given another chance to do so.

Finally, turning to Plaintiffs' Motion, which asks the Court to "sustain" and "reinstate" Plaintiffs' earlier Motion for Expansion of Time to Present Newly Discovered Evidence (Doc. 35), and "to grant a 90 day expansion of time to file the subject matter brief pertaining to Plaintiff's [sic] pleading" (Doc. 37 at 3), the undersigned recommends that Plaintiffs' Motion be denied.  Although it is unclear

what "brief" or "newly discovered evidence [g]ermaine to Plaintiff's [sic] endeavors regarding the above styled case" Plaintiffs intend to file, as stated earlier, in deciding Defendants' Motions to Dismiss, the Court is limited to the pleadings, the exhibits attached thereto, any documents central to Plaintiffs' claims, which were referenced in the Complaint, and any judicially noticed documents.  Therefore, Plaintiffs' Motion is due to be denied.

Accordingly, it is respectfully **RECOMMENDED** that Defendants' Motions (**Docs. 18 & 19**) be **GRANTED**, Plaintiffs' Motion (**Doc. 37**) be **DENIED**, this action be **DISMISSED with prejudice**, and the Clerk be directed to enter judgment accordingly and close the file.

**DONE AND ENTERED** at Jacksonville Florida, on July 26, 2017.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record

*Pro Se* Parties

26